# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

UNITED STATES OF AMERICA, )
                                  )
          **Plaintiff,**          )
                                  )
**vs.**                                )         **Case No. 04-00412-01-CR-W-GAF**
                                  )
**MICHAEL SHAWN McCOURT,**      )
                                  )
          **Defendant.**        )

## ORDER

Comes now the Court herein and denies Defendant's Motion for New Trial.

## I.

In his Motion for New Trial, defendant alleges error in the Court allowing publication of portions of seven movie files to the jury. Approximately three seconds of each of the seven selected movies, out of the more than approximately 150 movies and 150 still images of child pornography found on the defendant's computer were allowed to be published to the jury. The images published were representative of the movies in question and extremely brief. Additionally, five of the seven movies in question represented files moved from the folder in which they were uploaded to defendant's computer. This movement indicated defendant's involvement with and knowledge of these files.

The Eighth Circuit upheld the admission and publication to the jury of images of child pornography, and the government's rejection of a stipulation as to the content of the images, in *United States v. Becht*, 267 F.3d 767 (8th Cir. 2001). Becht had been charged with the knowing possession and distribution of child pornography. The defendant objected that the prejudicial effect of the images outweighed their probative value, especially given the defendant's proffered stipulation to their content.

The *Becht* Court upheld the admission of the 39 still images of child pornography.  The Court referred

to *Old Chief v. United States*, 519 U.S. 172 (1997), wherein, it noted:

> [T]he Supreme Court reaffirmed the standard rule that 'a criminal defendant may not
> stipulate or admit his way out of the full evidentiary force of the case as the Government
> chooses to present it. . . .'  The Court recognized that 'the prosecution with its burden
> of persuasion needs evidentiary depth to tell a continuous story . . . and a naked
> proposition in a courtroom may be no match for the robust evidence that would be
> used to prove it.'  This circuit also has recently cited that general rule with approval.
> *See United States v. Hill*, 249 F.3d 707, 712 (8th Cir. 2001) (citing *Old Chief*, 519
> U.S. at 186-87). . . .  We believe that the *Old Chief* Court made clear that, absent the
> unusual circumstance of prior criminal status, the Government is free to offer its
> evidence as it sees fit.  *See Hill*, 249 F.3d at 713 (holding that 'the rationale for the
> limited rule of *Old Chief* disappears,' when a stipulation goes to any element of the
> crime other than criminal status.).

*Becht*, at 771 and 774.

The *Becht* Court further noted that the illegal nature of the images was not the only, nor the

most important element of the offense.  The defendant conceded that the only issue as to which there

was meaningful disagreement was what the defendant knew and whether he was aware of possessing

and transmitting the charged documents.  McCourt raised these defenses, and has added the defenses

of another perpetrator or computer hacker.  The *Becht* Court, again referring to *Old Chief*, observed:

> In *Old Chief*, the Court honored this 'multiple utility' rationale as additional grounds on
> which to reaffirm the general rule that the Government is free to offer evidence as it sees
> fit.  The Court noted that evidence may be valuable not only for its relevance to a single
> element, but also because it may at once prove multiple elements or embolden a jury to
> infer guilt by strengthening the evidentiary picture as a whole.  It held:
>
> Unlike an abstract premise, whose force depends on going precisely to a particular step
> in a course of reasoning, a piece of evidence may address any number of separate
> elements, striking hard just because it shows so much at once. . . .  Evidence thus has
> force beyond any linear scheme of reasoning, and as its pieces come together a
> narrative gains momentum, with power not only to support conclusions but to sustain

2

Case 4:04-cr-00412-GAF   Document 67   Filed 08/26/05   Page 2 of 12

the willingness of jurors to draw inferences, whatever they may be, necessary to reach an honest verdict.

*Old Chief*, 519 U.S. at 187. We believe this rationale applies equally here. *Becht*, at 772.

The Court observed that in Becht's case, part of the government's proof depended upon the jurors' willingness to infer that the defendant saw his own computer service and that what he saw would have put him on notice of its illegal content. Alternatively, the Court went on, the government needed to offer evidence that the file names the defendant hand-sorted actually corresponded with images of child pornography so that he was able to place them in the appropriate subdirectory. McCourt was not, like Becht, dividing the downloads into directories descriptive of the victims. However, McCourt did have to decide whether they were still images or videos, and then decide whether to put them in the Fserv at all, and then whether to put them into "MUSIC_TV," or "Vids\20+m."

The *Becht* Court held that a stipulation that the images constituted child pornography would have been ineffective to address those additional purposes, and the fact that the images were relevant to an element other than their nature as illegal child pornography made the defendant's argument inapplicable.

As stated previously, five of the seven movie clips exhibited to the jury were files which had been moved to various subfolders within the defendant's system. Thus, showing defendant's knowledge of these files and his management of them. The files rebutted defendant's stated lack of interest in and knowing possession of any pornographic material depicting child pornography. Additionally, all of the movie clips exhibited demonstrated that the content of each file largely conforms

3

to the filename.  This was important to show that the defendant was on actual notice that he was receiving, retaining, and making available for distribution files of hard core child pornography.

The *Becht* Court recognized another important, related burden of the government's proof in a child pornography case.  It validated the government's purpose to show that the images were not "close cases" of child pornography, for example, those of 15-16 year old girls.  The *Becht* Court upheld the viewing of child pornography images of 4-5 year old children, observing that, "Only by viewing the images could the jury understand how likely it was that even a glance would have revealed the presence of illegal images."  *Id*. at 774.

In *United States v. Kuennen*, 901 F.2d 103, 106 (8th Cir. 1990), a case of controlled delivery of child pornography to the defendant, the Eighth Circuit upheld the introduction into evidence of pornographic items the defendant claimed he had received after the charged child pornography was ordered.  In finding that the items were admissible to prove *scienter,* it cited with approval *United States v. Garot*, 801 F.2d 1241 (10th Cir. 1986).

In *Garot*, the Court ruled that the trial court had properly admitted evidence of hard core child pornography additional to the charged material, noting, "Clearly [defendants], as defendants under a child pornography charge, unavoidably risked introduction of evidence that would offend the average juror."  *Garot*, at 1247.

In the case at hand, the sensitivity of prospective jurors to these images was explored in voir dire to eliminate those who would be unduly impacted.  Furthermore, the number of images shown was severely limited as was the length of time allowed for each clip.  Given the nature of the charges against

4

McCourt, his defense to those charges and the precautions taken to limit the impact of the publication

of the movie clips to the jury, McCourt's allegation of error on this point is denied.

**II.**

Defendant next alleges error in the Court's allowing him to be impeached with the fact that 14

months after the offenses he was using the password "Christ 69" for his hotmail account.

During trial, defendant tried to minimize the offensiveness of his use of the "trigger"

"!JesusFuckingChrist" in his Panzer advertisement by explaining to the jury that the phrase was one that

was being chanted by spectators on a concert recording he had, and that he had not meant to offend

anyone. He testified to the jury saying that, 'looking back on it, it's embarrassing.' The defendant was

clearly implying that his "trigger" didn't mean anything, and in hindsight he shared some of the jury's

presumed sensitivities to the sacrilegious phrase. Confronting him with his "Christ69" password, being

used 14 months after the offense, demonstrated for the jury that his self-serving statements about his

subsequent professed sensitivities were false.

Defendant's credibility was not being impeached because of what he seems to imply in his

argument here was a personal religious practice. His credibility was being impeached by demonstrating

that his professed sensibility to the sacrilegious use of the name was not true. Furthermore, any

potential concern with an improper prejudicial effect was effectively addressed by the "other acts" jury

instruction (Instruction No. 14; Eighth Cir. Jury Instruction 2.08). This instruction was modified at

defendant's request to include the defendant's "use of sacrilegious and offensive terms."

**III.**

The defendant further complains that the Court's refusal of his proffered theory of defense instruction regarding the issue of identity prejudiced his right to a fair trial. In this regard, defendant concedes that his proffered instruction was not factually accurate. Defendant orally proposed that he could modify his proffered instruction as follows:

> "I can alter the first sentence of that basically to reflect as relied on, the defense, that his computer, the functioning of his computer was altered by another person or persons through a computer virus." (Tr. 421).

Defendant did not offer specific language or a modified instruction in writing. Defendant's intended corrections were provided orally at the instruction conference. The Court stated that defendant's proposed alteration would be denied, but that counsel could argue his point to the jury.

Each of the descriptions of the substantive offenses (Instruction Nos. 20, 22, and 26) listed as the first element the requirement that the jury find that the defendant knowingly or intentionally committed certain acts. When these descriptions were followed by the elements for an attempt to commit the substantive offenses (Instruction Nos. 21, 23, and 24), the attempt instructions repeated that "A person may be found guilty of an attempt if *he* intended to" complete the substantive offense.

The Instructions defining knowledge and intent (Instruction Nos. 29 and 31) make clear that the intent/knowledge elements have to be the *defendant's* state of mind as reasonably inferred by the *defendant's* actions, omissions, and/or statements.

"The district court evaluates the adequacy of instructions by reviewing them as a whole." *United States v. Ellerman*, 411 F.3d 941, 945 (8th Cir. 2005) (citing *United States v. McQuarry*, 726 F.2d 401, 402 (8th Cir. 1984) (per curiam)).

6

Combined with the multiple references in the instructions to the presumption of innocence afforded the defendant, the jury was fairly advised that they had to find not only that the defendant (not a hacker) was the one who committed the crimes, but that the defendant did so knowingly, intentionally, and beyond a reasonable doubt.

"[Defendant] is entitled to a proposed instruction that conveys the substance of his request if his request is timely, it is supported by the evidence in the case, and is a correct statement of the law. However, the entitlement does not guarantee a particular formulation of the proposed instruction. Reversal of a conviction, based upon an instructional error, is only warranted if the error causes prejudice." *United States v. Gary*, 341 F.3d 829, 834 (8th Cir. 2003).

Finally, the defendant has not demonstrated how, even if the failure to give the instruction were error, he was prejudiced thereby. Defendant was able to fully explore at trial the evidence that his computer was vulnerable to use by a hacker. No additional jury instruction relative to identity would have been likely to change the outcome of the case.

## IV.

The defendant alleges various *Brady* and Due Process violations relating to the expert testimony of Det. Mike Jacobson of the Regional Computer Forensics Laboratory. Defendant alleges that three undisclosed variances between Det. Jacobson's disclosed reports and his trial testimony violated the magistrate's scheduling order, the discovery rules, and the government's obligation to disclose material exculpatory and impeachment evidence.

The alleged discovery violations are as follows:

7

**A.** **Variance Between Det. Jacobson's June 2, 2005 Report on Kazaa Activity and Trial Testimony**

Detective Jacobson submitted a report on June 2, 2005, that included his observations about how the file-sharing program, "Kazaa Lite," had operated on the defendant's computer. In this report, Detective Jacobson averred that the Kazaa "dbb" files "track successful file downloads from Kazaa Lite." He noted that the dbb files reflected approximately 24,197 downloads. Defendant responded with two reports regarding Kazaa from his own expert, Mr. Troy Schnack, on June 7 and June 9.

The government relates that outside the courtroom approximately ten minutes before the trial was to begin with the reading of the preliminary jury instructions and opening statements, Detective Jacobson summoned the prosecutor to tell her that he discovered he had made a mistake in a portion of his Kazaa analysis.

Defense counsel states that he learned of Detective Jacobson's mistake "at the end of the cross-examination of Detective Jacobson." The government had elicited no testimony about the mistaken material. Rather, defense counsel challenged Detective Jacobson on the mistaken material, at which time Detective Jacobson admitted he had made a mistake on those points. Therefore, defense counsel demonstrated that, at the very least, he had reason to believe that Detective Jacobson could be challenged on certain portions of the expert's findings, on which the government was not relying. A review of defendant's expert Mr. Schnack's reply report on Kazaa issues, dated June 7, indicates that Detective Jacobson's mistake was already known to the defense. In any event, Detective Jacobson's mistake became known to the defense prior to the end of his testimony and was used to impeach him while he was still on the stand.

8

Additionally, defense counsel used this mistake by references to it in closing argument. This point is denied.

### B. Detective Jacobson's Report on the Time Variance on the Defendant's Computer

Detective Jacobson's initial report in this case, dated September 18, 2003, reported, in pertinent part, as follows:

> The following data was found within the Panzer file structure: Identified the log file of the undercover investigating officer accessing the FSERVE, downloading the reported files and uploading the file stated in his report. Noted a substantial time date discrepancy of 6 years. This logging discrepancy appears to have been corrected on or about June 17, 2003. *See* attachment 3.

The defendant attempted to interpret Detective Jacobson's statement as a finding that the defendant's computer had completely righted potential day, month, and year discrepancies no later than June 17, 2003. While Detective Jacobson's wording of the finding may be ambiguous, he does not seem to restrict his observation of the discrepancy to the difference in years between 2003 and the year 1997, which was recorded on the log.[1]

Government's trial exhibit number 22, in fact indicated a variance of 4 days, 16+ hours, and 6 years between the undercover officer's downloading of files from the defendant's computer and the defendant's computer logging of that activity. If Detective Jacobson had noticed the additional day/hours discrepancy, he would have mentioned it in his report.

---

[1]Defense counsel's recross-examination of Detective Jacobson seems to confirm this interpretation. When asking about the file creation date of the auto.txt file, defense counsel asks Detective Jacobson, "We know it was six years off up until June 17, so we are assuming that's actually 2003."

9

Detective Jacobson's trial testimony was not at variance with his report. He simply clarified what the report language meant – that it was intended to be restricted to the year variance.

In any event, defense counsel was able to cross-examine Detective Jacobson on this point. Defense counsel also entered Detective Jacobson's report into evidence as Defense Exhibit 10, and argued the point in closing argument. This point is denied.

### C.    Detective Jacobson's Trial Testimony Re: Auto.txt File

Defendant also complains that Detective Jacobson revealed for the first time in his redirect examination the finding that the creation date on the defendant's Panzer auto.txt file was February 4, 1997.

In opening statement, defendant admitted choosing three out of the four chat rooms reflected in the records of his chats, but denied choosing to be in "#100%PreTeenGirlSexPics." Government's exhibit number 24, a "chan.txt" printout, displayed the four chosen chat rooms. The auto.txt file merely recorded the date of those selections.

Detective Jacobson's testimony regarding the recording of the selection of the offending chat room, #100%PreTeenGirlSexPics, was responsive to defendant's case, as set out in defendant's opening statement.

Furthermore, the auto.txt information was contained on the copy of the defendant's hard drive given to the defense expert months before trial. Additionally, Detective Jacobson's testimony regarding the auto.txt recording of the chat room selections was given in time for defense counsel to cross-examine the witness on the point. The information was adduced in time for the defense expert to check its accuracy and refute it, if possible, during his own testimony.

10

"To establish a *Brady* violation, a defendant must show that the government suppressed exculpatory evidence that was material either to guilt or to punishment.  Evidence is material under *Brady* if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  The critical question, however, is whether the defendant received a trial resulting in a verdict worthy of confidence.  We review the district court's denial of a new trial motion based on a *Brady* claim for abuse of discretion."  *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) (internal citations omitted).

"Under the rule in our circuit *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial."  *Id*.

Similarly, "Due process is generally satisfied if evidence is disclosed in time for the defense to take advantage of it."  *Almendares*, at 663.

"Evidence must be favorable to the accused to create a *Brady* violation."  *United States v. Vieth*, 397 F.3d 615, 619 (8th Cir. 2005).  In a case in which the defendant believes there were differences between a witness's trial testimony and prior disclosed statements, there is no *Brady* violation if defense counsel impeached the witness with his prior inconsistent statements.  *Id.*

*Brady* requires no more than that the existence of allegedly suppressed materially exculpatory evidence become known to the defense. *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004).  The rule of Brady is limited to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. *Nassar v. Sissel*, 792 F.2d 119, 121 (8th Cir. 1986).

*Brady* imposes no obligation on the State to reveal the exculpatory nature of the evidence being turned over but only requires complete disclosure to the defense. *Odem v. Hopkins*, 192 F.3d 772, 777 (8th Cir. 1999).

None of the alleged variances in the testimony of Detective Jacobson was materially exculpatory to the defendant. All were disclosed in a fashion that allowed the defendant to address them and use them at trial. Defense counsel very capably used these matters in the cross-examination of the government's expert, the direct examination of its own expert, and in closing argument.

WHEREFORE, for the reasons stated herein, Defendant's Motion for New Trial is denied.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:    August 26, 2005

12